UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAWON M. MARTIN,

               Plaintiff,                Case No. 1:24-cv-646

v.                                Honorable Robert J. Jonker

HEIDI WASHINGTON et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff may proceed *in forma pauperis* in this action. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Washington, Davids, Bonn, Greenfield, Ferguson, and Unknown Party for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against all Defendants will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Equal Protection, and

conspiracy claims against Defendants Rosenburg and Tucker. Plaintiff's retaliation claims against Defendants Rosenburg and Tucker remain in the case.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington and the following ICF personnel: Warden John Davids; Deputy Warden Unknown Bonn; Sergeant Unknown Greenfield; Grievance Coordinator M. Ferguson; Corrections Officers Jacob Rosenburg and Unknown Tucker; and Psychologist Unknown Party named as John Doe. Plaintiff sues Defendants in their respective official and personal capacities. (Compl., ECF No. 1, PageID.1–2.)

Plaintiff contends that while he was confined at ICF, Defendants Rosenburg and Tucker conducted a "campaign of harassment and retaliatory attacks" against Plaintiff because Plaintiff and Defendant Rosenburg had attended the same middle school and had "run in's" while there. (*Id.*, PageID.3.) Plaintiff alleges that on June 28, 2022, he asked Defendant Tucker why she had been harassing him and ransacking his cell on a weekly basis and she stated, "I'm sticking up for my fellow officer. You thought Rosenburg forgot about you beating him up and how much of a[n] asshole you were to him in school." (*Id.*) Plaintiff then sent several kites to Defendants Washington and Davids and to an outside Ombudsman. (*Id.*)

On July 1, 2022, Defendant Rosenburg came to Plaintiff's cell and told him that he was "going to turn up the heat and that he was just getting started." (*Id.*) Plaintiff responded that he did not want any problems and that they should leave the past in the past. (*Id.*) Defendant Rosenburg then told Plaintiff that he would consider the issue resolved if Plaintiff stabbed an inmate for him

2

that had been causing trouble for Defendant Tucker. (*Id.*) Plaintiff refused, and Defendant Rosenburg told him that he would regret it. (*Id.*)

In response to Plaintiff's letter to the Ombudsman, an investigation was opened on July 8, 27, 2022. (*Id.*) Plaintiff began filing grievances and sending written complaints to Defendants Washington, Davids, and Bonn regarding Defendants Tucker and Rosenburg. (*Id.*) Defendant Ferguson improperly rejected Plaintiff's grievances in an attempt to cover up the harassment. (*Id.*)

Plaintiff states that prison administration had him transferred from unit 4 block to unit 5 block in order to avoid any and all contact with Defendants Rosenburg and Tucker. (*Id.*, PageID.4.) On July 12, 2022, Defendant Rosenburg was allowed to work in Plaintiff's unit despite the fact that Defendants Davids, Bonn, and Washington were aware of the issues between Plaintiff and Defendant Rosenburg. (*Id.*) Plaintiff states that as he was released from his cell for mandatory law library callout Defendant Rosenburg was standing on the 5 block unit's base. Defendant Rosenburg ordered Plaintiff to submit to a shakedown and while performing the search, he told Plaintiff that if he did not stop snitching on him, he would get Plaintiff stabbed. (*Id.*) Defendant Rosenburg then called Plaintiff a "snitch" in a loud voice, placing Plaintiff's life in danger. (*Id.*)

On July 16, 2022, Defendant Tucker was allowed to work in Plaintiff's unit even after Plaintiff complained about the series of retaliatory attacks by Defendant Tucker's co-conspirator Defendant Rosenburg. Plaintiff states that Defendant Tucker announced over the intercom that she hoped "some people liked their food trays today." (*Id.*) Plaintiff states that he refused his food try because he was afraid that something had been done with his food. (*Id.*)

On July 30, 2022, Plaintiff's mother sent several letters to Defendants Washington, Bonn, and Davids indicating that she feared for Plaintiff's safety at ICF. (*Id.*, PageID.4 and 6.) On July 29, 2022, Defendants Ferguson, Bonn, and Davids placed Plaintiff on modified access to the

grievance procedure in order to retaliate against him. (*Id.*, PageID.4.) Defendant Bonn knew of Plaintiff's issues with Defendant Rosenburg and promised to transfer Plaintiff to another facility if he stopped filing grievances. (*Id.*, PageID.5.) Plaintiff states that Defendants' treatment of him aggravated his mental illness and Plaintiff eventually attempted suicide. (*Id.*)

On August 5, 2022, Plaintiff tried to write a grievance, but Defendants Bonn, Davids, Ferguson, and Greenfield failed to investigate his claims. (*Id.*) Plaintiff wrote to the Ombudsman again and on September 12, 2022, he received a response that an investigation had been opened. (*Id.*) On December 12, 2022, Plaintiff received notice from the Ombudsman's office that due to his transfer from ICF to JCF, they could no longer do anything for him. (*Id.*)

Defendant Unknown Party John Doe Psychologist was aware of the mistreatment of Plaintiff but chose to disregard the threats to Plaintiff's life as well as Plaintiff's spiraling mental state. (*Id.*) Defendant Greenfield denied all of Plaintiff's grievances for lack of merit. (*Id.*)

On May 28, 2024, Plaintiff received a letter from "H.R.," who Plaintiff claims is Hanna Rosenburg. (*Id.*, PageID.6.) Plaintiff attaches a copy of the letter to his complaint and states that it serves as an admission of Defendant Rosenburg's retaliatory actions towards Plaintiff. (*Id.*) Plaintiff states that months after filing the letters of complaint, he was transferred to another prison. (*Id.*)

Plaintiff asserts that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments as well as under state law. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendant Washington

Plaintiff fails to make specific factual allegations against Defendant Washington, other than his claim that she failed to conduct an investigation in response to his kites, letters, and grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Washington.

### B.      Interference with Grievance Process

Plaintiff states that Defendants Greenfield, Ferguson, Bonn, and Davids all failed to investigate his grievances regarding Defendants Rosenburg and Tucker. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir.

6

2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Nor was Plaintiff's right to petition government violated by the alleged failure to investigate or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Plaintiff also claims that Defendants Davids, Bonn, and Ferguson improperly rejected grievances and placed him on modified access to the grievance procedure. Such conduct did not violate Plaintiff's rights under the First Amendment. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445-47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive (PD) 03.02.130 ¶ MM (eff. Mar. 18, 2019). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy. *Id.*, ¶¶ MM, J(3). As with any grievance rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ I. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

## C.    Eighth Amendment

Plaintiff asserts that all of the Defendants violated his Eighth Amendment rights by being deliberately indifferent to threats to his mental health and his physical safety. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

9

### 1.  Defendants Rosenburg and Tucker

Plaintiff contends that while he was confined at ICF, Defendants Rosenburg and Tucker conducted a "campaign of harassment and retaliatory attacks" against Plaintiff because Plaintiff and Defendant Rosenburg had attended the same middle school and had "run in's" while there. (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that Defendant Tucker harassed him and ransacked his cell on a weekly basis, stating, "I'm sticking up for my fellow officer. You thought Rosenburg forgot about you beating him up and how much of a[n] asshole you were to him in school." (*Id.*)

Plaintiff alleges that on July 1, 2022, Defendant Rosenburg came to his cell and told him that he was "going to turn up the heat and that he was just getting started." (*Id.*) Plaintiff responded that he did not want any problems and that they should leave the past in the past. (*Id.*) Defendant Rosenburg then told Plaintiff that he would consider the issue resolved if Plaintiff stabbed an inmate for him that had been causing trouble for Defendant Tucker. (*Id.*) Plaintiff refused, and Defendant Rosenburg told him that he would regret it. (*Id.*)

Plaintiff states that on July 12, 2022, Defendant Rosenburg ordered Plaintiff to submit to a shakedown and while performing the search, he told Plaintiff that if he did not stop snitching on him, he would get Plaintiff stabbed. (*Id.*, PageID.4.) Defendant Rosenburg then called Plaintiff a "snitch" in a loud voice, placing Plaintiff's life in danger. (*Id.*) On July 16, 2022, Defendant Tucker announced over the intercom that she hoped "some people liked their food trays today." (*Id.*) Plaintiff construed this as a threat and refused his food tray because he was afraid that something had been done to his food. (*Id.*)

In general, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950,

954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Therefore, Plaintiff's claims of harassment fail to rise to the level of an Eighth Amendment violation.

To the extent that Plaintiff claims that Defendant Rosenburg labeled him a snitch and threatened to have him stabbed, the Court notes that inmates have a constitutionally protected right

to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

Labeling an inmate as a snitch may constitute deliberate indifference to the inmate's safety. *See, e.g.*, *Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *see also Odom v. McKenzie*, No. 12-CV-79-HRW, 2012 WL 6214367, at *3 (E.D. Ky. Dec. 13, 2012) (citations omitted). "It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates. If an inmate is believed to be a 'snitch' by other inmates, he or she faces a substantial risk of assault by other inmates." *Spotts v. Hock*, No. CIV. 10-353-GFVT, 2011 WL 676942, at *2–3 (E.D. Ky. Feb. 16, 2011) (internal citation omitted).

However, in at least one published opinion, the Sixth Circuit has held that to state a claim for deliberate indifference under the Eighth Amendment in such a context, a plaintiff must allege, and ultimately establish, that he or she suffered physical harm as a result of being labeled a snitch. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 359 (6th Cir. 2002) (affirming district court's dismissal where plaintiff's claim that he was endangered by being labeled a snitch was unsupported by any allegation of harm); *Yaklich*, 148 F.3d at 600–01 (concluding that plaintiff failed to state an Eighth Amendment claim based upon inmate threats where he alleged no physical

injury); *White v. Trayser*, No. 10-CV-11397, 2011 U.S. Dist. LEXIS 31434, 2011 WL 1135552 (E.D. Mich. Mar. 25, 2011) (holding that plaintiff failed to state an Eighth Amendment claim where he alleged that defendant endangered his life by thanking him for information about illegal contraband in the presence of other inmates but failed to allege that he suffered any physical injury); *Catanzaro v. Mich. Dep't of Corr.*, No. 08-11173, 2009 U.S. Dist. LEXIS 108443, at *25, 2009 WL 4250027, at *12 (E.D. Mich. Nov. 19, 2009) ("[A]n Eighth Amendment deliberate indifference claim must be grounded in an actual physical injury."). Plaintiff fails to make any such allegations. Nor does Plaintiff allege facts showing that other inmates believed him to be a snitch and posed a danger to him as a result of Defendant Rosenburg's conduct. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants Rosenburg and Tucker.

### 2.  Defendants Davids, Bonn, Greenfield, or Ferguson

Because Plaintiff fails to show that he was placed at risk of being seriously injured or killed, Plaintiff fails to allege facts showing that Defendants Davids, Bonn, Greenfield, or Ferguson were deliberately indifferent to such a risk to Plaintiff as a result of the conduct of Defendants Rosenburg or Tucker. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendants Davids, Bonn, Greenfield, or Ferguson.

### 3.  Defendant Unknown Party

Plaintiff claims that Defendant Unknown Party psychologist was deliberately indifferent to Plaintiff's complaints that he was being threatened and that his mental health was spiraling. (ECF No. 1, PageID.5.) Plaintiff separately states that Defendant Unknown Party's treatment of him aggravated his mental illness and Plaintiff eventually attempted suicide. (*Id*.) However, Plaintiff fails to allege any specific facts regarding his interactions with Defendant Unknown Party or showing that Defendant Unknown Party was aware of any suicidal ideation on Plaintiff's part.

The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).

To satisfy the subjective component of the deliberate indifference standard, a plaintiff must show both that a prison official "subjectively perceived facts from which to infer substantial risk to the prisoner" and that he "did in fact draw the inference." *Comstock*, 273 F.3d at 703. "An official's failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation," cannot support a claim of deliberate indifference. *Farmer*, 511 U.S. at 838 (emphasis added). An official's subjective knowledge, however, may be inferred from the fact that an inmate's "substantial risk" of harm was "obvious." *Id.* at 842. In the context of prison suicides, this means that it must have been obvious that there was a "strong likelihood" an inmate would attempt suicide. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (quoting *Barber v. City of Salem*, 953 F.2d 232, 239–40 (6th Cir. 1992)).

As noted above, Plaintiff's claim against Defendant Unknown Party is entirely conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### D.    Equal protection

Plaintiff makes a conclusory assertion that Defendants violated his right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV;

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by

state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Because Plaintiff fails to allege any facts showing that he was treated differently than a similarly situated individual, his equal protection claims are properly dismissed.

### E.    Retaliation

Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To the extent that Plaintiff claims that Defendants Rosenburg and Tucker conducted a "campaign of harassment and retaliatory attacks" against him because Plaintiff had bullied Defendant Rosenburg in school (Compl., ECF No. 1, PageID.3), Plaintiff fails to show that he engaged in protected conduct. Therefore, any conduct on the part of Defendants Rosenburg and Tucker which was motivated by their past history in school does not constitute retaliation for purposes of the First Amendment.

However, the Court notes that Plaintiff's July 1, 2022, refusal to stab an inmate who had been causing trouble for Defendant Tucker at the request of Defendant Rosenburg and his subsequent act of filing grievances and a complaint with the Ombudsman's office does constitute protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Fletcher v. Bradford*, No. 1:18-cv-1160, 2018 WL 5961044, at *3 (W.D. Mich. Nov. 14, 2018) (holding both that the MDOC had conceded that the filing of a complaint was protected conduct and that, because the purpose of the Ombudsman's office was to receive complaints from prisoners, the filing of a complaint with the office is protected conduct as a matter of law) (citing *Griffin v. Berghuis*, 563 F. App'x 411 (6th Cir. 2014) (holding that participation in an investigation by the Ombudsman's office was conceded by the defendants to be protected conduct)).

Following this date, Plaintiff alleges that on July 12, 2022, Defendant Rosenburg ordered Plaintiff to submit to a shakedown and while performing the search, he told Plaintiff that if he did not stop snitching on him, he would get Plaintiff stabbed. Defendant Rosenburg then called Plaintiff a "snitch" in a loud voice, placing Plaintiff's life in danger. Plaintiff also alleges that on July 16, 2022, Defendant Tucker announced over the intercom that she hoped "some people liked

17

their food trays today." Plaintiff believed that this was a threat directed towards him and refused

his food try because he was afraid that something had been done with his food. (Compl., ECF No.

1, PageID.3–4.)

The Court concludes that although Plaintiff's retaliation claims against Defendants

Rosenburg and Tucker are not particularly strong and are largely conclusory, at this point in the

litigation, they are not properly dismissed.

With regard to Plaintiff's retaliation claims against the remaining Defendants, Plaintiff fails

to allege any facts showing that any of them acted with a desire to retaliate against Plaintiff for

engaging in protected conduct. As noted above, conclusory allegations of unconstitutional conduct

without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–

79; *Twombly*, 550 U.S. at 555.

Moreover, to the extent Plaintiff contends that Defendants' adverse action against him was

placing Plaintiff on modified access to the grievance process, the Sixth Circuit repeatedly has held

that placement on modified access does not constitute an adverse action for purposes of a

retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir.

Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated

on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of

Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir.

Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from

continuing to engage in protected conduct, because modified-access status does not impair the

ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the

grievance procedure merely enables prison officials to screen Kennedy's grievances prior to filing

to determine whether they were grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F.

App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)). For the same reasons that placement on modified grievance access does not amount to adverse action, an official's rejection of a grievance is not sufficiently adverse to state a retaliation claim. *See, e.g.*, *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016).

### F.    Conspiracy

Plaintiff broadly asserts that Defendants conspired with one another to violate his rights and to cover up any misconduct. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individuals. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that his grievances have been rejected

19

or denied and that he has been subjected to objectionable treatment by prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### G.    State law claims

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain

supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction as to Plaintiff's state-law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Washington, Davids, Bonn, Greenfield, Ferguson, and Unknown Party will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, Equal Protection, and conspiracy claims against Defendants Rosenburg and Tucker. Plaintiff's retaliation claims against Defendants Rosenburg and Tucker remain in the case.

An order consistent with this opinion will be entered.


Dated:    March 6, 2025                              /s/ Robert J. Jonker
                                                     Robert J. Jonker
                                                     United States District Judge